Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yandong Song<br>Petitioner,<br>v.<br>James JANECHA, Warden (or Facility Administrator) of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Los Angeles, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief |

**INTRODUCTION**

1. Petitioner Yandong Song is a native and citizen of the People's Republic of China who was lawfully admitted to the United States at Los Angeles International Airport on July 20, 2018, as a B-2 nonimmigrant visitor, after inspection and admission by an immigration officer. He has lived in this country continuously ever since, at the same home in Irvine, California, where he raises his two minor children. On July 18, 2019, he filed an Application for Asylum and for Withholding of Removal (Form I-589) with United States Citizenship and Immigration Services ("USCIS"), seeking protection from the very government that now seeks his return. That application sat pending for seven years; on August 21, 2026, the Los Angeles Asylum Office referred it to the Immigration Court. Mr. Song is now civilly detained at the Adelanto ICE Processing Center.

2. Mr. Song was at liberty. For eight years he lived openly, at a fixed address the Government has always known — the address on his own asylum application — and he complied with every obligation the Government imposed on him. Respondents permitted him to remain at liberty throughout that period; they made an affirmative decision not to detain him. Then, on August 18, 2026, officers of U.S. Immigration and Customs Enforcement ("ICE") Los Angeles Foreign Fugitive Unit surveilled his home, followed his car, pulled him over on a public street in Irvine, and took him into custody. He received no advance notice of any kind and no hearing before a neutral decision-maker. He was taken so abruptly that his two minor children, then ages 12 and 16, were left home alone; DHS's own report records that Mr. Song had to be "permitted to make a phone call to make arrangements for the children to be picked up and cared for."

3. Nothing about Mr. Song had changed. What changed is that ICE learned of an INTERPOL Red Notice. DHS's Form I-213 states that on July 1, 2026, the Foreign Fugitive Unit "received a lead referral from USCIS, identifying SONG as an overstay and the subject of an INTERPOL Red Notice issued on behalf of the government of China." The Red Notice — published

January 31, 2019, under case number A-1169/1-2019 — and the one-page Chinese detention warrant behind it, issued by the Dongfeng Road Sub-Bureau of the Zhengzhou City Public Security Bureau under case number [2018]10204, are the operative reason ICE targeted Mr. Song for a "fugitive" arrest, and the operative reason the Immigration Judge later denied him bond.

4. But an INTERPOL Red Notice is not a warrant, and it is not enough to arrest a person in the United States. A Red Notice is a request for international cooperation circulated among police agencies by a private international association. It is issued by no United States judicial officer. It rests on no oath or affirmation. It is not independently vetted for factual or legal sufficiency, and INTERPOL itself does not "weigh evidence or assess and determine the culpability or criminal responsibility of an individual." The Ninth Circuit "has repeatedly declined to hold that a Red Notice alone suffices to constitute probable cause," Villalobos Sura v. Garland, 8 F.4th 1161, 1167–68 (9th Cir. 2021), and "[t]he Department of Justice takes the position that a Red Notice 'does not meet the requirements for arrest under the [Fourth] Amendment to the Constitution.'" Gonzalez-Castillo v. Garland, 47 F.4th 971, 978 (9th Cir. 2022).

5. Nor could the Chinese detention warrant itself supply authority to seize Mr. Song. A foreign arrest warrant has no legal force in the United States. The only lawful route by which a foreign state's warrant may result in an arrest here is the extradition process of 18 U.S.C. § 3184, which requires an extradition treaty, a complaint made under oath, and a warrant issued by a United States judge or magistrate judge. The United States has no extradition treaty with the People's Republic of China. No extradition complaint was filed against Mr. Song, no United States judicial officer ever reviewed the Chinese accusation, and no United States court ever found probable cause. Respondents used the civil immigration detention power to accomplish precisely what the criminal and extradition laws forbade them to do directly.

6. Mr. Song is not subject to mandatory detention. He was admitted after inspection and has no criminal conviction of any kind in the United States. The sole charge in his Notice to Appear is a simple nonimmigrant overstay under INA § 237(a)(1)(B). His detention is therefore discretionary and governed by 8 U.S.C. § 1226(a).

7. The Due Process Clause of the Fifth Amendment does not permit the Government to strip a person of his liberty first and supply process later. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). There was nothing quick or impracticable here. ICE received the USCIS lead on July 1, 2026, ran database checks, surveilled Mr. Song's residence and his registered vehicle, and waited. It knew exactly where he lived and where he would be. It could have given him notice and a hearing. It chose instead to take him off the street.

8. On September 4, 2026, Mr. Song received a bond hearing under 8 U.S.C. § 1226(a) before Immigration Judge Patrick D. Barrett, who denied bond on the sole ground that Mr. Song "failed to meet his burden to establish that he is not such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate it." The Immigration Judge made no finding that Mr. Song is a danger to anyone. That after-the-fact hearing does not cure the constitutional injury. As courts in this District have repeatedly held, a post-deprivation bond hearing "is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and the "appropriate remedy for the deprivation is release from custody" — even where, as here, the noncitizen has already been given a bond hearing and denied bond. Mikayelyan v. Giles, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19 (C.D. Cal. May 20, 2026).

9. The bond denial supplies an independent reason for release. A man who has lived at one address for eight years, who filed an asylum application that told the Government exactly where to find him, whose two minor children live in that home, who has never missed an immigration obligation, and who has no criminal record, is not a flight risk. The only thing in the record that made him look like one is the Red Notice and the "Foreign Fugitive" label ICE attached to him because of it. On materially identical facts, a court recently granted habeas and ordered immediate release, holding that an Immigration Judge's danger and flight-risk finding "which rested solely on the Red Notice, violated due process." Shklyarevsky v. ICE Field Office Director, No. 2:26-cv-01079-JHC (W.D. Wash. June 23, 2026).

10. Mr. Song therefore does not ask this Court to order another bond hearing. He asks this Court to issue the writ and order his immediate release from custody, restoring the conditions of liberty that existed before his unlawful arrest on August 18, 2026.

**CUSTODY**

11. Mr. Song is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. He is therefore in the "'custody' of [the DHS] within the meaning of the habeas corpus statute." Jones v. Cunningham, 371 U.S. 236, 243 (1963).

**JURISDICTION**

12. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause), U.S. Const. amends. IV and V, and 5 U.S.C. §§ 701–706 (Administrative Procedure Act). This Court also has jurisdiction to review Mr. Song's bond determination for constitutional claims and legal error. Martinez v. Clark, 124 F.4th 775, 781–82 (9th Cir. 2024).

## VENUE

13. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district, in San Bernardino County, and because a substantial part of the events giving rise to these claims — including his arrest in Orange County and his detention in San Bernardino County — occurred here.

## REQUIREMENTS OF 28 U.S.C. § 2243

14. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id.

15. The Great Writ affords "a swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963). The statute directs courts to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." Yong v. INS, 208 F.3d 1116, 1120 (9th Cir. 2000). And "the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

## EXHAUSTION

16. For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

17. Waiver is warranted here. Mr. Song's core claims — that he was seized without the pre-deprivation process the Constitution requires, and that Respondents arrested him on the strength

of a foreign Red Notice that supplies neither probable cause nor arrest authority — are constitutional questions the immigration courts have no jurisdiction to adjudicate and no power to remedy. An Immigration Judge cannot order release as a remedy for the denial of pre-deprivation process, cannot suppress or remedy an unconstitutional arrest, and cannot award the relief Mr. Song seeks. The bond hearing already provided is precisely the after-the-fact proceeding the case law holds insufficient to cure the injury. See Zaitsev v. Warden, Adelanto, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026); Zepeda Perez v. Santacruz, 2026 WL 980492, at *5 (C.D. Cal. Apr. 9, 2026).

18. To the extent Mr. Song could appeal the September 4, 2026 bond denial to the Board of Immigration Appeals, prudential exhaustion should still be waived because his continued detention inflicts irreparable injury each day it persists, and because his two minor children are without their father while he is detained. Perez v. Wolf, 445 F. Supp. 3d 275, 285–86 (N.D. Cal. 2020); W.T.M. v. Bondi, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) ("[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals"). No statutory exhaustion requirement applies to Mr. Song's constitutional claims. Reno v. Am.-Arab Anti-Discrim. Comm., 525 U.S. 471 (1999).

## PARTIES

19. Petitioner Yandong Song is a male native and citizen of the People's Republic of China, born October 20, 1982. He was lawfully admitted to the United States on a B-2 visitor visa at Los Angeles International Airport on July 20, 2018, and has resided here continuously since. He resides at 89 Turnstone, Irvine, California 92618, with his two minor children. His Application for Asylum and for Withholding of Removal (Form I-589), filed with USCIS on July 18, 2019, was referred to the Immigration Court on August 21, 2026, and remains pending before that court; his minor child Zimeng Song (A213-180-846) is a derivative on that application.

20. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center. In that capacity he is Mr. Song's immediate custodian.

21. Respondent Jaime Rios is the Field Office Director for the Los Angeles Field Office, Enforcement and Removal Operations, ICE, and is named in his official capacity as a legal custodian of Mr. Song.

22. Respondent Todd M. Lyons is the Acting Director of ICE and is named in his official capacity. ICE is responsible for the administration and enforcement of the immigration laws, including the detention and removal of noncitizens.

23. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security ("DHS") and is named in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the INA. See 8 U.S.C. § 1103(a).

24. Respondent Todd Blanche is the Attorney General of the United States and is named in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## FACTUAL ALLEGATIONS

### A. DHS's Enforcement Campaign and Its Use of Foreign Red Notices.

25. Since mid-2025, DHS has pursued an aggressive enforcement campaign targeting noncitizens who are in regular immigration proceedings and who have pending applications for relief — including by developing "lead referrals" from USCIS files and arresting long-settled people at their homes, in their cars, and at Government offices when they appear for scheduled interviews and hearings. This campaign prioritizes arrest numbers over any individualized assessment of danger or flight risk, and has swept up large numbers of people with no criminal history.

26. Within that campaign, ICE's Foreign Fugitive Units use INTERPOL Red Notices — requests circulated at the behest of foreign governments, including governments with documented records of political abuse of the INTERPOL system — as the trigger for targeted arrests of noncitizens who are neither charged with nor convicted of any offense in the United States. That is what happened to Mr. Song.

**B. Mr. Song Entered Lawfully, Has Lived Openly at One Address for Eight Years, and Has an Asylum Application Pending.**

27. Mr. Song was admitted to the United States at Los Angeles International Airport on July 20, 2018, as a B-2 nonimmigrant visitor, with authorization to remain until January 19, 2019.

28. On January 15, 2019, Mr. Song filed a Petition for a Nonimmigrant Worker (Form I-129) with USCIS. USCIS denied that petition on May 27, 2020. On July 18, 2019, Mr. Song filed an Application for Asylum and for Withholding of Removal (Form I-589) with USCIS, on which his minor child Zimeng Song is a derivative. That application remained pending before USCIS for more than seven years. On August 21, 2026, the Los Angeles Asylum Office issued a Notice of Forwarding of Form I-589 to EOIR, referring the application to the Immigration Court, where it remains pending today.

29. Throughout those years Mr. Song lived openly and at a single fixed address, 89 Turnstone, Irvine, California 92618 — the address he gave the Government on his own applications and the address to which USCIS sent its correspondence, including the August 21, 2026 referral notice. He never absconded, never used an alias, and never concealed his whereabouts. DHS located him not through any investigation into flight, but through "commercially available database information" and a referral from USCIS's own files.

30. Mr. Song's two minor children, ages 12 and 16 at the time of his arrest, live with him at that address and depend on him.

31. Mr. Song is currently in removal proceedings. The sole charge in his Notice to Appear (Form I-862), served August 18, 2026, is that he is a nonimmigrant who remained longer than permitted, in violation of INA § 237(a)(1)(B). He has no criminal conviction of any kind in the United States, and DHS's Form I-213 identifies no United States arrest, charge, or conviction. His next master calendar hearing before the Adelanto Immigration Court is set for October 8, 2026.

**C. The Chinese Warrant and the INTERPOL Red Notice Are Baseless and Politically Motivated.**

32. According to DHS's Form I-213, the Dongfeng Road Sub-Bureau of the Zhengzhou City Public Security Bureau issued a detention warrant for Mr. Song under case number [2018]10204 on July 2, 2018. The warrant is a bare, conclusory instrument. It recites no evidence, identifies no complaining witness, and attaches no trial record, victim statement, or judicial finding of any kind.

33. On January 31, 2019, at the request of the People's Republic of China, INTERPOL published a Red Notice for Mr. Song under case number A-1169/1-2019. DHS's Form I-213 describes the offense as "fraud"; the underlying Chinese accusation is the offense of "illegally absorbing public deposits" — a charge the Chinese authorities have repeatedly used against persons the state wishes to reach for other reasons. DHS's own record thus does not consistently state what Mr. Song is even accused of.

34. The accusation is false. Mr. Song denies committing any crime in China.

35. The People's Republic of China has a documented record of misusing INTERPOL's red-notice system to reach individuals abroad for political reprisal. The United States Department of State's Country Reports on Human Rights Practices for China state that "there were credible reports the government attempted to misuse international law enforcement tools for politically motivated purposes as a reprisal against specific individuals located outside the country." Courts have

recognized the same pattern with respect to other authoritarian requesting states. See Tatintsyan v. Barr, 799 F. App'x 965, 966–67 (9th Cir. 2020).

36. The Red Notice and the foreign warrant — not any United States criminal charge, judicial warrant, or finding of probable cause — were the operative reason Respondents targeted Mr. Song for a Foreign Fugitive Unit arrest, and the operative reason the Immigration Judge later denied him bond.

**D. The August 18, 2026 Warrantless Street Arrest.**

37. On July 1, 2026, ERO Los Angeles's Foreign Fugitive Unit received a lead referral from USCIS identifying Mr. Song as an overstay and as the subject of an INTERPOL Red Notice issued on behalf of the government of China. Nothing in that referral suggested that Mr. Song posed a danger to anyone or that he was about to flee.

38. Rather than seek any judicial process, Foreign Fugitive Unit officers — working with the Federal Bureau of Investigation and the United States Marshals Service — located Mr. Song's residence using "commercially available database information and surveillance," canvassed the neighborhood for vehicles registered to him, found one, and waited for him to come out. When a man they believed to be Mr. Song got into a car, the officers followed him, activated their emergency lights, and stopped him near the corner of Alton Parkway and Fairbanks in Irvine, California. They identified him from photographs and took him into custody, transporting him to the ICE sub-office in Santa Ana for processing. DHS's Form I-213 records the date and hour of this action as August 18, 2026 at 12:38, and states that "[o]n August 18, 2026, ERO Los Angeles, FFU Officers, arrested SONG pursuant to a targeted enforcement operation in Irvine, CA."

39. At processing, Mr. Song told the officers that his two minor children, ages 12 and 16, were at home alone. He was permitted one telephone call to arrange for someone to pick them up.

40. Mr. Song received no notice, written or oral, that his liberty was at risk. He was given no opportunity to be heard before he was taken into custody, no opportunity to present evidence that he is neither a danger nor a flight risk, and no decision by any neutral adjudicator before his detention. No United States judge or magistrate judge ever reviewed the foreign accusation against him, found probable cause, or issued a warrant for his arrest. Respondents did not adjudicate or terminate his pending asylum application before detaining him.

41. There was no emergency and no impracticability. Respondents had known of Mr. Song's Red Notice and his address since at least July 1, 2026. They conducted database checks and physical surveillance. They chose the time and place of the stop. They had every opportunity to provide notice and a hearing before depriving him of his liberty, and every opportunity to seek review by a neutral judicial officer. They did neither.

**E. The September 4, 2026 Bond Denial.**

42. On September 4, 2026, Mr. Song appeared with counsel before Immigration Judge Patrick D. Barrett of the Adelanto Immigration Court for a custody redetermination under 8 C.F.R. § 1236.1. In support of release he submitted evidence that he is neither a danger nor a flight risk and that the foreign charge is false and politically motivated, including briefing establishing that an INTERPOL Red Notice is not reliable evidence of criminal conduct and that China abuses the red-notice system against political opponents abroad.

43. The Immigration Judge denied bond. The written order states a single ground: that Mr. Song "failed to meet his burden to establish that he is not such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate it." The Immigration Judge made no finding that Mr. Song is a danger to the community. Mr. Song reserved appeal; the appeal deadline is October 5, 2026.

44. The only material in the record capable of supporting a "significant risk of flight" finding was the Red Notice, the foreign warrant, and the "Foreign Fugitive" framing DHS built around them. Every objective flight-risk factor pointed the other way: an eight-year fixed address, two minor children in the home, a pending asylum application that gives Mr. Song every reason to appear, an unbroken record of compliance, no criminal record, no attempt ever to flee or conceal himself, and family able to post bond.

**F. DHS's Form I-213 Is Internally Inconsistent and Materially Inaccurate.**

45. The Form I-213 on which DHS relied is unreliable on its face. It states in its "Additional Information" section that "SONG does not appear to have any pending applications or benefits to which he is entitled" — while the same document states, two pages earlier, that "SONG's Form I-589 remains pending." That misstatement is material: it erased the single strongest fact bearing on flight risk.

46. The form is inconsistent in other respects as well. It recites that the Chinese detention warrant issued on "July 2, 2108" — an impossible date. It states in one place that "Subject does not have children or dependents," and in another that Mr. Song has two minor children who were home alone at the time of his arrest. Its narrative describes the surveillance-and-stop operation as occurring on "July 16, 2026," while the form's date-of-action field and its summary place the arrest on August 18, 2026. And it characterizes the Red Notice offense as "fraud," which is not the offense stated in the underlying Chinese instrument.

47. A Form I-213 is ordinarily presumed reliable, but that presumption yields where the document is internally contradictory and demonstrably inaccurate on material points. Respondents cannot justify a seizure and continued detention on a record that contradicts itself.

## LEGAL ARGUMENT

**I. Mr. Song Is Not Subject to Mandatory Detention; His Detention Is Discretionary Under 8 U.S.C. § 1226(a).**

48. Because Mr. Song was arrested and is detained pending a decision on whether he may remain in the United States, his detention is governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention and expressly provides for release on bond or conditional parole. Detention under § 1226(a) is permissive, not mandatory, and it is "always constrained by the requirements of due process." Hernandez, 872 F.3d at 981. Respondents' own decision to place Mr. Song in § 1226(a) custody-redetermination proceedings confirms that his detention is discretionary.

49. Mr. Song is not subject to mandatory detention under INA § 236(c). He has no criminal conviction and is charged only with a nonimmigrant overstay under INA § 237(a)(1)(B) — not with any offense that triggers mandatory detention. Nor does the mandatory-detention provision expanded by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), reach him: he was admitted after inspection on a valid visa, so the threshold inadmissibility predicate under INA § 212(a)(6)(A), (6)(C), or (7) is absent, and he has committed no enumerated theft, burglary, or assault offense.

50. A foreign arrest warrant and an INTERPOL Red Notice are not United States criminal convictions or charges and cannot supply a basis for mandatory detention. Because no statute compelled Mr. Song's detention, Respondents' decision to seize him was a discretionary exercise of executive power over a person who was lawfully at liberty — and was therefore subject to the full requirements of the Due Process Clause, including the requirement of pre-deprivation process.

**<u>II. Mr. Song Had a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before He Was Detained.</u>**

51. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003).

52. Mr. Song was not a stranger at the border seeking entry. He was admitted after inspection, has lived at liberty in this country for eight years, is raising two minor children here, and has an asylum application that has been pending before the Government since 2019. Respondents permitted him to remain at liberty throughout that period. That Respondents never formally "released" him on bond makes no difference: the liberty interest attaches whenever the Government has allowed a noncitizen to live at liberty while his immigration proceedings are pending. "[A]lthough the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); see also Gagik T. v. Chestnut, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026).

53. A noncitizen living at liberty in the United States has a due process interest in "an opportunity or a hearing before he is deprived of any significant protected interest." R.A.N.O v. Wofford, __ F. Supp. 3d __, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original). The rule that process must precede deprivation is the constitutional default. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." Logan, 455 U.S. at 436. This is not one of the "extraordinary situations where some valid governmental interest is at stake that

justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (citation modified). Respondents provided Mr. Song neither notice nor a hearing. They simply took him.

**<u>III. An INTERPOL Red Notice Is Not a Warrant and Supplied No Lawful Authority to Arrest or Detain Mr. Song.</u>**

54. Respondents targeted and arrested Mr. Song because he is the subject of an INTERPOL Red Notice and an accompanying Chinese detention warrant. Neither instrument authorizes an arrest in the United States, establishes probable cause, or shows that Mr. Song is a danger or a flight risk.

**<u>A. A Red Notice is a request for cooperation, not a warrant, and no United States officer may arrest on it.</u>**

55. INTERPOL is not a law enforcement agency and issues no process. A Red Notice "is a request for international cooperation"; it "does not weigh evidence or assess and determine the culpability or criminal responsibility of an individual," and INTERPOL itself warns that entities using its data to apply "coercive measures, including . . . detention [or] arrest," must independently ensure the data are "accurate and relevant." Shklyarevsky v. ICE Field Office Director, No. 2:26-cv-01079-JHC, slip op. at 6 (W.D. Wash. June 23, 2026). The Department of Justice's own guidance to federal prosecutors states the same: a Red Notice is not a warrant, and United States authorities may not arrest on the basis of a Red Notice alone. See U.S. Dep't of Justice, Justice Manual, Criminal Resource Manual § 611 (INTERPOL Red Notices).

56. The Fourth Amendment permits an arrest only on probable cause, determined — outside narrow exceptions — by a neutral and detached magistrate, and it applies to arrests for civil immigration violations. Perez Cruz v. Barr, 926 F.3d 1128, 1137–40 (9th Cir. 2019). A Red Notice satisfies none of these requirements. It issues from no judicial officer, rests on no oath or affirmation, and describes no facts subjected to any neutral review. To treat it as authority to seize a person in the

United States is to let a foreign executive's say-so do the work the Constitution assigns to a United States judge.

**B. A foreign warrant may be executed in this country only through extradition — and there is no extradition treaty with the People's Republic of China.**

57. The Chinese detention warrant behind the Red Notice has no independent legal force here. Congress has prescribed the exclusive path by which a foreign state's criminal process may lead to an arrest in the United States: an extradition treaty, a complaint made under oath, and a warrant issued by a United States judge or magistrate judge after a finding that the offense is covered and the evidence sufficient. 18 U.S.C. § 3184. The United States has no extradition treaty with the People's Republic of China. No extradition complaint was filed, no United States judicial officer reviewed the Chinese accusation, and no United States court found probable cause.

58. Respondents may not use the civil immigration detention power as a substitute for a process Congress has not authorized. Detention under § 1226(a) exists to secure a noncitizen's appearance in removal proceedings and to protect the community — not to hold a person at the behest of a foreign government that cannot lawfully reach him. Zadvydas, 533 U.S. at 690. Using an immigration arrest to accomplish an extradition the law forbids is detention untethered from any permissible purpose.

**C. A Red Notice cannot supply probable cause, and its reliability rises no higher than the foreign warrant behind it.**

59. The Ninth Circuit "has repeatedly declined to hold that a Red Notice alone suffices to constitute probable cause because it 'is not independently vetted for factual and legal justifications.'" Villalobos Sura v. Garland, 8 F.4th 1161, 1167–68 (9th Cir. 2021); Gonzalez-Castillo v. Garland, 47 F.4th 971, 978 (9th Cir. 2022) ("it does not appear to us a Red Notice alone is ordinarily sufficient to establish probable cause that a crime has occurred"). Indeed, "[t]he Department of Justice takes the position that a Red Notice 'does not meet the requirements for arrest

under the [Fourth] Amendment to the Constitution.'" Id. No court has held otherwise. See Barahona v. Garland, 993 F.3d 1024, 1027 (9th Cir. 2021) ("[t]he parties did not cite, and we could not find, a case in which a court has found a Red Notice, alone, is sufficient to meet this standard").

60. Because a Red Notice's reliability rises no higher than the foreign warrant on which it rests, and that warrant here is a bare, conclusory instrument reciting no evidence, no witness, and no judicial finding, the instruments cannot bear the weight Respondents place on them — particularly where the requesting state is the People's Republic of China, which has a documented record of misusing INTERPOL's red-notice system to reach individuals abroad for political reprisal. See Tatintsyan v. Barr, 799 F. App'x 965, 966–67 (9th Cir. 2020). The Red Notice thus confirms, rather than excuses, the absence of any lawful basis for seizing Mr. Song without process.

**D. The statutory predicate for a warrantless immigration arrest is absent on this record.**

61. An immigration officer may arrest a noncitizen without a warrant only if the officer has reason to believe the person is in the United States in violation of law "and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); see 8 C.F.R. § 287.8(c)(2)(ii). The Ninth Circuit enforces that second requirement as a real constraint. Perez Cruz, 926 F.3d at 1137–40.

62. The predicate fails here on Respondents' own account. ICE received the USCIS lead on July 1, 2026. It then ran records checks, identified Mr. Song's home, canvassed for his registered vehicle, conducted surveillance, and waited — for weeks — before stopping him. A person whom officers can watch at leisure, at a residence he has occupied for eight years, is not a person "likely to escape before a warrant can be obtained." And to the extent Respondents relied on an administrative warrant of arrest (Form I-200), such a warrant is issued by an officer of the arresting agency itself

— not by a neutral and detached magistrate — reflects no judicial probable-cause determination, and supplies none of the pre-deprivation process the Due Process Clause requires.

**<u>IV. Each Mathews Factor Confirms That Pre-Deprivation Process Was Constitutionally Required.</u>**

63. To determine what process Mr. Song was due, the Court weighs the three factors of Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interest affected, the risk of erroneous deprivation and the value of additional safeguards, and the Government's interest. Each favors Mr. Song.

64. First, the private interest is at its zenith. Mr. Song's interest in freedom from detention is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). His liberty enables him to raise his two minor children, prosecute the asylum application on which their protection also depends, and "form the other enduring attachments of normal life." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

65. Second, the risk of erroneous deprivation is severe, and pre-deprivation safeguards would greatly reduce it. A unilateral ICE arrest decision — made by the enforcing agency itself, on the strength of an unvetted foreign Red Notice from a government with a record of political abuse of that system, and reviewed by no neutral adjudicator before the seizure — is precisely the kind of procedure that produces error. The error here is concrete and documented: DHS's own Form I-213 wrongly reported that Mr. Song had no pending applications, when his asylum application had been pending for seven years. "A neutral judge is one of the most basic due process protections." Castro-Cortez v. INS, 239 F.3d 1037, 1049 (9th Cir. 2001); see Singh v. Noem, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026).

66. Third, the Government's interest in detaining Mr. Song without any prior process is low. The Government's only legitimate interests are preventing danger and ensuring appearance,

Zadvydas, 533 U.S. at 690, and Mr. Song presents neither concern: he entered lawfully, has lived at one address for eight years, is the father of two minor children who live with him, has an asylum application pending that gives him every incentive to appear, has no criminal record, and was located through his own filings with the Government. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" R.A.N.O., 2026 WL 40507, at *7. This case therefore "does not represent the special instance of the Mathews due process analysis where post-deprivation process is all that is due." Zinermon v. Burch, 494 U.S. 113, 139 (1990).

## V. The Appropriate Remedy Is Immediate Release; the Post-Deprivation Bond Hearing Did Not Cure the Violation.

67. "[T]he traditional function of the writ is to secure release from illegal custody." Preiser, 411 U.S. at 484. Where the Government detained a person who was lawfully at liberty without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." Mikayelyan v. Giles, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19 (C.D. Cal. May 20, 2026).

68. That Mr. Song has now received a § 1226(a) bond hearing — and been denied bond — does not defeat his claim; it confirms it. Courts have repeatedly held that "[a] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." Zaitsev, 2026 WL 1047942, at *7; accord Zepeda Perez, 2026 WL 980492, at *5. Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." E.A.T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

69. For that reason, courts have ordered immediate release even where the petitioner had already received a post-deprivation bond hearing and been denied bond. See Singh, 2026 WL

766228, at *10 (immediate release warranted notwithstanding a post-deprivation bond hearing that "failed to cure the injury of being detained"); Mikayelyan, supra (granting the petition and ordering release even though the petitioner had been given a bond hearing at which the Immigration Judge denied bond). Mr. Song is entitled to the same relief.

**<u>VI. Independently, the Bond Denial Rested on the Red Notice and Was an Abuse of Discretion Requiring Release.</u>**

70. Even setting aside the pre-deprivation violation, the Immigration Judge's September 4, 2026 bond denial independently requires Mr. Song's release. This Court has habeas jurisdiction to review a bond determination for constitutional claims and legal error, and reviews the Immigration Judge's flight-risk determination for abuse of discretion — that is, to determine whether the Immigration Judge applied the correct legal standard to the facts. Martinez v. Clark, 124 F.4th 775, 781–85 (9th Cir. 2024).

71. In assessing flight risk, an Immigration Judge must weigh the factors set out in Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), and Matter of R-A-V-P-, 27 I. & N. Dec. 803 (BIA 2020), including a fixed address, length of residence, family ties, record of appearances, criminal record, and any attempt to flee. Those factors overwhelmingly favor Mr. Song: eight years at a single address in Irvine; two minor children living in that home; an asylum application pending since 2019 and now before the very court that will hear his case; a perfect record of compliance; no criminal record; no alias, no concealment, and no attempt ever to flee; and family able to post bond.

72. The Immigration Judge nonetheless found a flight risk so significant that "no amount of bond or alternatives to detention" could mitigate it. On this record, the only material capable of supporting that finding was the INTERPOL Red Notice and the foreign warrant — the "fugitive" label DHS attached to Mr. Song. That was error. A Red Notice "may be relied on by an IJ to make a danger to the community finding; but for such a notice to serve as the sole basis for detention, it

must be supported by evidence that is 'probative and specific.'" Ortega-Rangel v. Sessions, 313 F. Supp. 3d 993, 1005–06 (N.D. Cal. 2018). Here the Government offered no such evidence — only a Form I-213 that reflects no criminal history, contradicts itself on material points, and wrongly denies the existence of Mr. Song's pending asylum application, together with a Red Notice and a conclusory foreign warrant that recite no evidence, no witness, and no judicial finding.

73. An Immigration Judge who rests a flight-risk finding on an unsupported Red Notice, while disregarding the substantial evidence of community ties and compliance before him, abuses his discretion and violates due process. Ortega-Rangel, 313 F. Supp. 3d at 1004–06. On facts materially identical to these — a long-settled noncitizen arrested on the strength of an INTERPOL Red Notice whose Immigration Judge denied bond in reliance on it — a court recently granted habeas and ordered immediate release, holding that the "danger to the community and flight risk finding, which rested solely on the Red Notice, violated due process." Shklyarevsky v. ICE Field Office Director, No. 2:26-cv-01079-JHC, slip op. at 8 (W.D. Wash. June 23, 2026). Where due process violations pervade a bond hearing, the proper remedy is immediate release. See Miri v. Bondi, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026); Garcia v. Hyde, 817 F. Supp. 3d 112, 131 (D.R.I. 2025); Soriano v. Hernandez, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026).

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**

**Violation of Procedural Due Process (Detention Without Pre-Deprivation Process) — U.S. Const. amend. V**

74. Mr. Song re-alleges and incorporates by reference each preceding paragraph.

75. Mr. Song had a protected liberty interest in remaining free from civil detention while lawfully at liberty and pursuing his pending application for asylum. Due process required that Respondents provide him notice and a hearing before a neutral adjudicator before depriving him of

that liberty. No emergency or impracticability excused that requirement, and no foreign Red Notice or warrant supplied a lawful basis to act without process. Respondents provided no notice and no hearing of any kind, and thereby violated procedural due process. That violation was complete upon his detention and cannot be cured by any hearing offered after the fact. The Court should grant the writ and order Mr. Song's immediate release.

**SECOND CLAIM FOR RELIEF**

**Unlawful Seizure — Arrest and Detention on an INTERPOL Red Notice — U.S. Const. amends. IV and V; 8 U.S.C. § 1357(a)(2)**

76. Mr. Song re-alleges and incorporates by reference each preceding paragraph.

77. Respondents seized Mr. Song without a judicial warrant and without probable cause determined by any neutral judicial officer, on the strength of an INTERPOL Red Notice and a foreign detention warrant. A Red Notice is a request for international cooperation, not a warrant; it is not independently vetted; and it does not meet the Fourth Amendment's requirements for arrest. The foreign warrant is enforceable in this country only through the extradition process of 18 U.S.C. § 3184, which requires a treaty the United States does not have with the People's Republic of China. The statutory predicate for a warrantless immigration arrest under 8 U.S.C. § 1357(a)(2) is also absent, because Respondents surveilled Mr. Song for weeks at a residence he had occupied for eight years and cannot claim he was "likely to escape before a warrant can be obtained." Mr. Song's continued detention is the direct product of that unlawful seizure. The Court should grant the writ and order his immediate release.

**THIRD CLAIM FOR RELIEF**

**Violation of Due Process (Bond Denial Based on an INTERPOL Red Notice) — U.S. Const. amend. V**

78. Mr. Song re-alleges and incorporates by reference each preceding paragraph.

79. The Immigration Judge's September 4, 2026 denial of bond rested on the INTERPOL Red Notice and the Chinese warrant, unsupported by any probative and specific evidence, drawn from a Form I-213 that is internally contradictory and materially inaccurate, and in disregard of Mr. Song's substantial evidence of community ties, compliance, and family responsibility. Under Martinez v. Clark, Matter of Guerra, and Ortega-Rangel, that reliance was an abuse of discretion and a denial of due process. The Court should grant the writ and order Mr. Song's immediate release.

**FOURTH CLAIM FOR RELIEF**

**Violation of Substantive Due Process — U.S. Const. amend. V**

80. Mr. Song re-alleges and incorporates by reference each preceding paragraph.

81. Civil immigration detention must be tethered to a permissible purpose — preventing danger or ensuring appearance. Zadvydas, 533 U.S. at 690. Mr. Song — a lawfully admitted noncitizen with an eight-year fixed residence, two minor children in his home, a pending asylum application, no criminal conviction, and an unbroken record of compliance — is neither a danger nor a flight risk. His detention rests on an unvetted foreign Red Notice sought by the government he fled, and functions as a substitute for an extradition the law does not permit. It is not reasonably related to any permissible purpose and therefore violates substantive due process. The Court should grant the writ and order his immediate release.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner Yandong Song respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Mr. Song's detention, effected without notice and without a hearing before a neutral adjudicator prior to the deprivation of his liberty, is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that an INTERPOL Red Notice and a foreign arrest warrant do not establish probable cause and do not authorize the arrest or continued detention of a person in the United States, and that Mr. Song's arrest on August 18, 2026 was therefore unlawful;

(4) Declare that the Immigration Judge's denial of bond in reliance on the INTERPOL Red Notice violated due process, and that Mr. Song is not subject to mandatory detention under INA § 236(c);

(5) Issue a writ of habeas corpus and ORDER Respondents to release Mr. Song from custody immediately, subject to the conditions of liberty that existed prior to his arrest on August 18, 2026, and without imposing any new release restrictions, such as electronic monitoring;

(6) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(7) Award reasonable costs and attorney's fees; and

(8) Grant such further relief as the Court deems just and proper.

Dated: September 5, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on September 5, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner